**Kim M. TREON, II**

v.

**Trevor WHIPPLE, individually and in his official capacity, and the City of Barre.**

**No. CIV. 1:01CV105.**

United States District Court, D. Vermont.

July 9, 2002.

Oreste Victor Valsangiacomo, Jr., L. Brooke Dingedine, Valsangiacomo, Detor & McQuesten, P.C., Barre, VT, for plaintiff.

Janet C. Murnane, McNeil, Leddy & Sheahan, P.C., Burlington, VT, for defendants.

Joseph Leon Winn, Vermont Atty. General's Office, Montpelier, VT, for movant.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

MURTHA, District Judge.

### (Papers 28 and 31)

The plaintiff alleges the City of Barre and one of its police officers violated his rights during an investigation which resulted in his arraignment in Washington Superior Court, first on a charge of sexual assault, and later on charges of violating his conditions of release. Both defendants have moved for summary judgment, relying primarily on the availability of immunity from suit under federal and state law. For the reasons set forth below, the defendants' Motions for Summary Judgment are GRANTED.

### I. Background

On a motion for summary judgment, the moving party has the initial burden of informing the Court of the basis for its motion and of identifying the absence of a genuine issue of material fact. *See, e.g.,* *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994). Where, as here, a motion for summary judgment is supported by affidavits or other documentary evidence, the party opposing that motion must set forth specific facts showing there is a genuine, material issue for trial. *See* *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 526 (2d Cir.1994).

To avoid summary judgment, the opposing party must come forward with enough evidence to support a verdict in his favor. *See Salahuddin v. Coughlin,* 781 F.2d 24, 29 (2d Cir.1986). A party cannot defeat a pending motion by presenting irrelevant arguments or metaphysical doubt, conjecture or surmise concerning the facts. *See* *Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only disputes over facts which might affect the outcome of the suit under the governing law preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Upon review of the submissions of the parties, the Court finds the following undisputed, material facts. In December 1997, City of Barre Police Chief Trevor Whipple was a corporal and juvenile officer assigned to investigate sexual abuse or assault allegations involving juvenile complainants. *See* Aff. of Trevor Whipple (appended to Paper 33 as Ex. A) (hereinafter referred to as "Whipple Aff.") at para. 2. On December 3, 1997, the assistant principal at Spaulding High School told Cpl. Whipple that a female student, M.W., had reported that she had been sexually assaulted by the plaintiff, a fellow student at Spaulding. *See* Whipple Aff. at para. 3.

M.W. had dated the plaintiff in September 1997. In her taped statement to Cpl. Whipple made on December 15, 1997, M.W. indicated the plaintiff was intoxicated and had forced her to engage in sexual intercourse. *See* Whipple Aff. at paras. 9–10. When confronted, the plaintiff first denied the assault, and then admitted having sex with M.W. which perhaps was "too rough." *See* Whipple Aff. at para. 7. He also admitted that he had been drinking alcohol and was dealing drugs at school. *Id.*

Cpl. Whipple presented his preliminary finding to the Washington County State's Attorney's Office. At the behest of the State's Attorney's Office, Whipple performed additional investigation of M.W.'s allegations. *See* Aff. of Terry Trono (appended to Paper 33 as Ex. E) at paras. 2–4. His investigation included obtaining a statement from one of the plaintiff's former girlfriends. Like M.W., she indicated the plaintiff had forced her to have sex, that he had physically abused her during their relationship, and that he consumed

alcohol and smoked marijuana regularly. *See* Whipple Aff. at paras. 11–16.

Cpl. Whipple prepared an affidavit of probable cause in which he summarized his supplemental investigation. Upon review, the State's Attorney's Office determined probable cause existed to arrest and prosecute the plaintiff for sexual assault. *See* Trono Aff. at para. 4.

On March 9, 1998, Washington District Court Judge Walter Morris, Jr. found probable cause to arraign the plaintiff on the sexual assault charge. The Court imposed conditions of release, including that the plaintiff not come within 500 feet of M.W.

M.W. subsequently contacted Cpl. Whipple and indicated that, on several occasions, the plaintiff had violated the "500 feet" condition of release. *See* Whipple Aff. at para. 24. Upon investigation of this allegation, Whipple obtained complainant and witness statements attesting to the fact that the plaintiff had come within 500 feet of M.W. *See* Whipple Aff. at para. 26.

The State's Attorney's Office presented Whipple's affidavit of probable cause to the Washington District Court. On March 25, 1998, the court arraigned the plaintiff on two counts of violating his conditions of release. Approximately one month later, the State's Attorney's Office dismissed the violation of conditions of release charge, ostensibly to focus the office's attention on the pending sexual assault charge. *See* April 29, 1998 Letter from Deputy State's Attorney Stephanie Ilberg (appended to Paper 33 as Ex. G.).

On April 6, 1998, the plaintiff filed a motion to dismiss the sexual assault charge on the ground that Cpl. Whipple's affidavit failed to establish probable cause for the commission of the crime alleged. On October 20, 1998, Judge Morris issued his Decision and Order. He concluded:

> We agree with the Defendant's contentions as to the *form* of the officer's fourteen page probable cause affidavit in this case. While the officer apparently intended to provide a full sequential account of his investigation and evidence gathered in the course thereof, the manner in which the officer recites the evidence renders it difficult to sort out the evidence which is deemed to be inculpatory and probative of the conclusion that probable cause exists to believe that an offense had been committed and that the Defendant committed it.
>
> Notwithstanding poor draftsmanship, we find and conclude that substantial evidence is presented in the officer's affidavit to establish probable cause for the allegation against the Defendant. The affidavit sets forth the alleged victim's account of the circumstances of the offense, events which preceded the offense, the location and manner of the Defendant's actions and his course of conduct. Sufficient detail is presented as to the circumstances of the offense, with corroborative circumstances and events including the manner and circumstances of revelation of the alleged offense, as to enable a finding by a preponderance of the evidence, and excluding modifying evidence, that an offense had been committed and that the Defendant had committed it.

Paper 33 at Exh. K, attachment 3 at pg. 2 (emphasis in original). Upon independent review and as discussed *infra*, this Court finds these conclusions are supported by the record.

In March 1999, the state dismissed the sexual assault charge against the plaintiff, citing concern about the impact of the prosecution on M.W. *See* Aff. of Stephanie Ilberg (appended to Paper 33 as Ex. F) at para. 7.

On March 8, 2001, the plaintiff filed the complaint underlying this suit in Washington Superior Court. Because of plaintiff's reliance on 42 U.S.C. § 1983, the defen-

dants removed the matter to this Court on March 29, 2001. *See* Notice of Removal (Paper 1) at paras. 3 and 4.

The gravamen of the plaintiff's complaint is that "Mr. Whipple failed to conduct any type of reasonable investigation or any type of investigation at all that would be recognizable and sufficient under any standard of investigation or protocol that was in effect at the time." Pl's Mem. in Opp. to Barre's Mot. for Summ.J. (Paper 52) at 2. He further claims: "Instead, Whipple admittedly accepted the story of the complaining witness as true without any critical inquiry of the truth or veracity of the allegations or the credibility of the witness despite the many inconsistencies and exculpatory information that was recklessly or purposely omitted or mischaracterized in his Affidavit as a result of his incompetence and/or bias." Pl's Mem. in Opp. to Whipple's Mot. for Summ.J. (Paper 50) at 2. Because the defendants initiated state criminal prosecutions against him without probable cause, the plaintiff asserts they have violated his rights under a variety of federal constitutional and state common law provisions.

## II. Discussion

### A. Municipal Liability

The plaintiff alleges the City of Barre is responsible for Cpl. Whipple's alleged "violations and torts [because they] were committed as a result of the failure of the City of Barre to train or supervise Trevor Whipple and was a result of their [sic] customs and/or policies." Complaint (Paper 6) at para. 2. The record before the Court, however, provides no basis for imposing liability on the City of Barre.

██ "It is well established that a municipality may not be held liable [under 42 U.S.C. § 1983] solely on the basis of *respondeat superior.*" *Powell v. Gardner,* 891 F.2d 1039, 1045 (2d Cir.1989). To impose liability on a municipality, the plaintiff must demonstrate the existence of an unconstitutional policy or custom adopted by municipal decisionmakers. *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 403–04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

Furthermore,

it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Id.* at 404, 117 S.Ct. 1382 (emphasis in original).

██ The plaintiff has not identified an unconstitutional policy or custom which has been adopted by Barre's decision-makers, nor has he presented a sufficiently direct causal link between his alleged injuries and municipal conduct. He complains about Barre's participation in or cooperation with the Washington Investigative Network ("WIN"). According to the plaintiff, WIN is a multi-disciplinary unit of police investigators, prosecutors, and an advocate coordinator who work together to conduct investigations involving domestic violence and sexual abuse. *See* Pl's Mem. in Opp. to Barre's Mot. for Summ.J. (Paper 52) at 5 *et seq.* However, the record contains no evidence that the City's association with WIN has been undertaken for the purpose of denying the plaintiff or any other male his civil rights. *See Kent v. Katz,* 146 F.Supp.2d 450, 458 (D.Vt.2001) ("In general, a single incident will not suffice to raise an inference of the existence of a custom or policy."). The plaintiff's unsupported speculation that WIN has a secret, sinister agenda and a "real and

perceived anti-male attitude" which resulted in his arrest, see generally Paper 52 et seq, provides an insufficient basis for imposing liability on the City.

[3] Likewise, the plaintiff's allegation that the City of Barre was negligent in failing to train or supervise Cpl. Whipple is unsupported. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under Section 1983." *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The record indicates Officer Whipple acted as a well-trained investigator of patently credible allegations against the plaintiff. *See generally* Supplemental Whipple Aff. (appended to Paper 30) at para. 3 *et seq.* (setting forth Whipple's training relating to criminal investigation techniques in general and to the investigation of sexual assault and child-victim cases). When conducting his investigation, he consulted with the Office of the State's Attorney for Washington County. In fact, it was the State's Attorney's Office which determined that Cpl. Whipple's investigation had yielded probable cause to arrest and prosecute. *See* Trono Aff. at para. 2. In short, there is no evidence the City of Barre failed to train or supervise Cpl. Whipple in conjunction with the investigation of M.W.'s charges against the plaintiff. *See Board v. Brown,* 520 U.S. at 411, 117 S.Ct. 1382 (A finding of municipal culpability "must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff.") (emphasis in original).

Lastly, the City of Barre is entitled to immunity from the plaintiff's state law claims. "In Vermont, as in most jurisdictions, municipalities can only be held liable for injuries arising from their proprietary,

as opposed to governmental duties." *Decker v. Fish,* 126 F.Supp.2d 342, 346 (D.Vt.2000). In this regard, "there can be little question that police work is a quintessential governmental function." *Id.* Therefore, the City of Barre is immune from plaintiff's state law claims.

## B. *Individual Liability*

The essence of the plaintiff's complaint against Cpl. Whipple is that his investigation of M.W.'s sexual assault charge was inept, incomplete and biased; therefore, he lacked probable cause to charge or arrest him. *See generally* Pl.'s Mem. in Opp. to Individual Def's Mot. for Summ.J. (Paper 50). In response, Cpl. Whipple has asserted qualified immunity.

"Qualified immunity protects a government official from suit for any actions that did not violate a clearly established constitutional right and those actions as to which the official had an objectively reasonable good faith belief that the action taken was lawful." *Smith v. Garretto,* 147 F.3d 91, 94 (2d Cir.1998). "The first inquiry to be made concerning qualified immunity is whether the plaintiff has 'allege[d] the violation of a clearly established constitutional right'." *Id.* (citing *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). If the court finds no constitutional right has been violated, the action is subject to dismissal. *See, e.g., Poe v. Leonard,* 282 F.3d 123, 132 (2d Cir.2002).

On the other hand, if the court finds a violation has occurred, then it must examine whether the right was clearly established at that time. *Id.* Viewed objectively, if officials of "reasonable competence could disagree on the legality of the defendant's actions" under the circumstances, then that "individual is entitled to immunity." *See Thomas v. Roach,* 165 F.3d 137, 143 (2d Cir.1999).

"Without a doubt, the right not to be arrested without probable cause is clearly established." *Martinez v. Simonetti,* 202

F.3d 625, 634 (2d Cir.2000). But the fact that the charges against the plaintiff eventually were dismissed does not, in and of itself, suggest Cpl. Whipple did not have probable cause to arrest or charge him. That is true where, as here, the dismissals were not tantamount to a finding of "not guilty." *See Murphy v. Lynn,* 118 F.3d 938, 948–49 (2d Cir.1997), *cert. denied,* 522 U.S. 1115, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998).

"Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Lennon v. Miller,* 66 F.3d 416, 424 (2d Cir. 1995) (citation and quotations omitted). "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubt as to the victim's veracity." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir.1995), *cert. denied,* 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996).

■ The officer's motivation to arrest is irrelevant to the question of probable cause. *Lee v. Sandberg,* 136 F.3d 94, 103 n. 5 (2d Cir.1997). When analyzing probable cause in the context of a qualified immunity defense, the Court need only find that the defendant had "arguable" probable cause to arrest. *See Martinez,* 202 F.3d at 634; *Lee,* 136 F.3d at 103.

■ The undisputed facts demonstrate Cpl. Whipple had probable cause to initiate the charges against the plaintiff. Both the plaintiff and M.W. were students at the same high school and had dated during September 1997. In a taped statement, M.W. reported the plaintiff had forced her to engage in sexual intercourse. An assistant principal reported the plaintiff initially had denied the incident, but then admitted to having "rough" sexual intercourse with M.W. When Cpl. Whipple attempted to speak with the plaintiff about the complaint, the plaintiff made a contradictory statement and denied that he had been alone with M.W. on the night the assault allegedly took place. *See* Whipple Aff. at para. 16.

Later, Cpl. Whipple learned from one of plaintiff's former girlfriends that, during their brief relationship, the plaintiff had been physically and sexually abusive and had frequently used alcohol and marijuana. *See* Paper 33 at Ex. A. para. 13. This report supported M.W.'s allegations that, when intoxicated, the plaintiff had sexually assaulted her.

■ Cpl. Whipple also had probable cause to charge the plaintiff with violating his conditions of release. After his arraignment on March 9, 1998, M.W. reported that the plaintiff had begun to menace her by waiting for her in the hallways at school. Cpl. Whipple confirmed this report with other witnesses. *See* Whipple Aff. at paras. 25–26.

Lastly, as a municipal officer, Whipple is entitled to qualified official immunity from the plaintiff's state law claims. The Vermont Supreme Court has applied the doctrine of qualified official immunity in cases involving municipal employees. *See, e.g., Morway v. Trombly,* 789 A.2d 965, 969 (Vt.2001); *Hudson v. Town of East Montpelier,* 161 Vt. 168, 171, 638 A.2d 561 (1993). "Qualified immunity is a judicially created doctrine that shelters state and municipal officials from suits for acts performed in the course of their duties." *Morais v. Yee,* 162 Vt. 366, 648 A.2d at 410 (1994). Qualified immunity protects these employees when they are "(1) acting during their employment and acting, or reasonably believing they are acting, within the scope of their authority; (2) acting in good faith; and (3) performing discretion-

ary, as opposed to ministerial acts." *La-Shay v. Dep't of Soc. and Rehab. Serv.*, 160 Vt. 60, 65, 625 A.2d 224 (1993).

Cpl. Whipple's investigation certainly was part of his employment and within the scope of his authority, and it involved discretionary actions. *See Decker*, 126 F.Supp.2d at 348. Moreover, the State of Vermont has adopted the objective "good faith" test from § 1983 qualified immunity cases. *See Sabia v. Neville*, 165 Vt. 515, 521, 687 A.2d 469 (1996). In this context, the Court's finding that Cpl. Whipple acted with arguable probable cause under federal law also indicates he is entitled to qualified immunity under state law. *See Kent*, 146 F.Supp.2d at 461, 463 (malicious prosecution is one initiated without probable cause).

### Conclusion

The City of Barre's Motion for Summary Judgment is GRANTED. Defendant Whipple's Motion for Summary Judgment is GRANTED.

SO ORDERED.