Sessions v. State, No. 39-1-99 Wncv (Teachout, J., Apr. 15, 2003)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]


**STATE OF VERMONT**
**WASHINGTON COUNTY, SS.**

| | | |
|---|---|---|
| **NATHANIEL SESSIONS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Washington Superior Court** |
| **v.** | ) | **Docket No. 39-1-99 Wncv** |
| | ) | |
| **STATE OF VERMONT, et al.,** | ) | |
| **Defendants.** | ) | |

**Decision on the State's Motion for Summary Judgment**

The State has moved for summary judgment on all claims against it. The State is represented by Kaveh Shahi, Esq. and Joseph L. Winn, Esq.; Plaintiff is represented by Robert Halpert, Esq. For the following reasons, the State's Motion for Summary Judgment is granted in part and denied in part.

The State claims that the pertinent facts are undisputed, whereas Plaintiff argues that there are important disputes of fact. Each party presents the court with facts interpreted in the light most favorable to its position. Some basic facts are undisputed. Plaintiff was sexually abused by Defendant Donald Lyons from the summer of 1989, when he was 13 years old, through September 1991. Donald Lyons was employed by the State as the Director of the Office of Travel and Tourism. Lyons met Plaintiff in the residential neighborhood where they both lived, and much of the sexual abuse took place off State property, but many incidents of sexual abuse took place at Lyons' office, both during and after hours, and a few took place at a State warehouse. Plaintiff was admitted freely to Lyons' office without appointment, without being stopped by the receptionist or other staff, contrary to normal office practice. Lyons hired Plaintiff to be a model for a photo shoot for purposes of promoting tourism, and Plaintiff was paid $150 from State funds for the one-time job. Lyons made sexual advances to Plaintiff at the car after the photo session, during the course of returning from it. At some point Lyons groped an adult male fellow employee, who told another State employee about it.

On the subject of Plaintiff's relationship to the State, the evidence is unclear. In addition to hiring Plaintiff for the photo shoot, Lyons took photos of groups of young people, including Plaintiff, engaged in athletic and other activities, and indicated that the photos were to be used for tourism purposes. On the subject of whether other employees at the office of Travel and

Tourism were aware that Lyons represented a danger to Plaintiff, there is sketchy evidence from which both parties draw inferences that support their positions. Drawing reasonable inferences from the evidence, which may include inconsistent or conflicting testimony, is the function of the jury. In a summary judgment motion analysis, the role of the court is to view the evidence from a perspective that gives the non-moving party the benefit of all reasonable inferences.

The claims against the State may be grouped as follows:
1) tort claims based on the actions of Donald Lyons;
2) tort claims based on the actions, and more particularly the inaction, of State employees other than Donald Lyons;
3) violation of Vermont Fair Employment Practices Act, 21 V.S.A. § 495; and
4) violation of Vermont Fair Housing & Public Accommodations Act, 9 V.S.A. §4502.
The State argues that sovereign immunity bars all group 1 and group 2 claims, and that there is no legally cognizable duty giving rise to the group 2 claims. It also argues that group 3 and group 4 claims fail as a matter of law on the undisputed facts.

**Tort claims based on the actions of Donald Lyons**

The tort claims based directly on the actions of Donald Lyons include: Count 3, sexual assault; Count 4, intentional infliction of emotional distress; and Count 5, invasion of privacy. These claims all arise directly out of alleged acts of sexual assault, and are pursued against the State on a theory of *respondeat superior*.

The State of Vermont waives its sovereign immunity under 12 V.S.A. § 5601(a) for injuries caused "by the negligent or wrongful act or omission of an employee of the state while acting within the scope of employment, under the same circumstances, in the same manner and to the same extent as a private person would be liable . . . ." Several exceptions to the waiver preserve immunity in certain circumstances. 12 V.S.A. § 5601(e). Specifically, section 5601(e)(6) preserves immunity from "[a]ny claim arising out of alleged assault, battery, abuse of process, misrepresentation, deceit, fraud, or interference with contractual rights." Plaintiff's Count 3 sexual assault claim falls squarely within section 5601(e)(6) and therefore is barred. Plaintiff's Count 4 intentional infliction of emotional distress claim and Count 5 invasion of privacy claim are different legal characterizations of the impact of the sexual assaults. These claims directly arise out of the alleged assault and battery and are also barred under 12 V.S.A. § 5601(e)(6).

Additionally, Plaintiff has not shown that any of the alleged acts of sexual assault in any way fall within the scope of Mr. Lyons' employment, a requirement under 12 V.S.A. § 5601(a). Even looking at all facts, including reasonable inferences, in the light most favorable to the Plaintiff, acts of sexual abuse cannot be construed as conduct falling within the scope of employment of a State employee, and sovereign immunity therefore bars these claims.

Plaintiff asserts that the section 5601(e)(6) exception does not apply in this case pursuant to 12 V.S.A. § 5601(f): "The limitations in subsection (e) of this section do not apply to claims

2

against the state of Vermont to the extent that there exists coverage under a policy of liability insurance . . . ." The State insists that no such coverage is available for these claims. Plaintiff, despite extensive discovery on this issue, has not made a sufficient showing that coverage does exist. A plaintiff has the burden of demonstrating that sovereign immunity is waived. See Mellin v. Flood Brook Union Sch. Dist., 173 Vt. 202, 218-19 (2001) ("To sustain a tort claim against the State, plaintiff must . . . . establish that no exception to the State's waiver of its immunity applies to her claim."). Plaintiff has not done that here. Therefore, summary judgment is granted to the State on the *respondeat superior* claims of sexual assault, intentional infliction of emotional distress, and invasion of privacy.

**Tort claims based on the actions or inaction of other State employees**

The tort claims based on the action or inaction of State employees other than Mr. Lyons include: Count 1, failure to warn of the danger presented by Mr. Lyons; Count 2, negligent hiring and supervision; Count 4, intentional infliction of emotional distress; and Count 6, breach of 'fiduciary' duty.

In all of these counts, Plaintiff claims that State employees other than Mr. Lyons negligently failed to protect Plaintiff from Mr. Lyons. Plaintiff's positions rest on resolution of inferences and nuances from disputed facts, which is a jury matter. Plaintiff's facts, viewed in the light most favorable to Plaintiff, appear sufficient to support jury findings that the employees were aware of Mr. Lyons' unpropitious proclivities and of the risk of harm Lyons posed to Plaintiff while in his company on state property, and that they failed to act to protect Plaintiff. The intentional infliction of emotional distress claim appears to rely on the same set of facts.

The State argues that it is entitled to judgment as a matter of law because no cognizable duty sounding in negligence exists to support the non-IIED claims, and that all claims are barred by sovereign immunity as arising out of assault and battery, 12 V.S.A. § 5601(e)(6).

An employer has a duty to exercise reasonable care to control "employees using his premises or chattels." 2 Dan B. Dobbs, The Law of Torts § 329, at 892; see also Restatement (Second) of Torts § 317 (duty of master to control conduct of servant). This duty "often translates to a duty to use care in hiring, supervising, or retaining a dangerous person whose position in employment puts him in a position to harm others, even if in harming others he is not acting within scope of employment." Dobbs, supra, § 331, at 895-96.

The State does not explain why this duty is *per se* inapplicable in this case, but rather likens this case to Sorge v. State, 171 Vt. 171 (2000). Discussing Restatement § 319 (duty of those in charge of persons having dangerous propensities) in great detail, the Sorge Court declined to find a duty on the part of SRS to control a minor in SRS custody during a temporary residential placement with his mother. The Court concluded that SRS had a sort of rehabilitative custody over the minor, not the sort of custodial control over a person with dangerous propensities giving rise to a duty under § 319. Sorge, 171 Vt. at 178. Mr. Lyons was an employee of the State in a position to hire youths to further promotion of tourism in the State.

Sorge is inapplicable on the facts. Plaintiff relies on Restatement § 317 (duty of master to control conduct of servant) and § 314B (duty to protect endangered or hurt employee), rather than the § 319 at issue in Sorge (duty of those in charge of persons having dangerous propensities).

The State also relies on the assault and battery exception to the sovereign immunity waiver, 12 V.S.A. § 5601(e)(6). Its argument is based on LaShay v. Dep't of Social and Rehabilitation Services, 160 Vt. 60 (1993). In LaShay, the plaintiff had been placed by SRS in the home of an abusive foster parent. A previous foster parent repeatedly warned SRS of the potential for abuse and yet SRS failed to investigate. By the time SRS finally removed the plaintiff from the abusive household, three sexual assaults had occurred. Among others, the claims included "negligent placement, supervision and investigation." Id. at 63. In addressing the sovereign immunity issue and after concluding that a private analog brought the case within the waiver, the Court concluded as follows:

> SRS argues that even if the Court finds that there are private analogs to the claims herein, this case fails under the exceptions to the general waiver in 12 V.S.A. § 5601(a) enumerated in subsection (e)(6). This subsection states in part that the general waiver does not apply to "[a]ny claim arising out of alleged assault." 12 V.S.A. § 5601(e)(6). We agree with SRS that all of plaintiff's claims arise out of the alleged assaults.

LaShay, 160 Vt. at 69. The State effectively reads LaShay as interpreting the "arising out of" language of § 5601(e)(6) broadly to bar independent torts, the proof of which necessitate the proof of an assault or battery as an element, such as in this case.

The issue is the breadth of the "arising out of" language of 12 V.S.A. § 5601(e)(6). This issue is described in detail in The Law of Torts as follows:

> For instance, the government may negligently hire or supervise a dangerous child molester or a violent worker. If the worker molests children or attacks citizens with acid, the plaintiff's claim is based on the government's negligence. Nevertheless, the plaintiff must ultimately prove the battery in order to show damages. For this reason, some courts have held that the battery exception applies to bar the plaintiff's claims. However, the Ninth Circuit has held that the exception does not relieve the government when its negligence is a proximate cause of the battery, in that case a kidnapping and rape of children by a person hired by the government to teach them. So far, the Supreme Court has not yet determined whether the government could be liable for negligently fostering employee batteries.

1 Dobbs, supra, § 267, at 714-15. The State argues that LaShay should be read to resolve this issue in Vermont by construing the "arising out of" language broadly to bar the independent torts.

On the other hand, the facts in <u>LaShay</u> are not described in the opinion in sufficient detail for the court to conclude that they are comparable to the facts in this case with respect to negligent supervision or failure to warn. In addition, the Court's conclusion in <u>LaShay</u> is reached without explanation of its basis in statutory interpretation or policy. Thus, with facts in this case that are disputed and require jury interpretation, facts in <u>LaShay</u> that are too undefined to determine comparability, and the absence of a clear explanation for the reasons behind the Supreme Court's decision on this issue, this court does not have a sufficient basis for making a ruling as a matter of law on either Count 1 (failure to warn of the danger presented by Mr. Lyons) or Count 2 (negligent supervision). Therefore, the State's motion must be denied as to these claims.

Because Plaintiff has not shown a sufficient factual basis to support the negligent hiring portion of Count 2, nor has he shown conduct on the part of any employee that satisfies all the elements of intentional infliction of emotional distress, summary judgment is granted in favor of the State on these claims.

Furthermore, Plaintiff has not shown support for a cause of action styled as "breach of fiduciary duty" (Count 6) independent of the claim for failure to warn or negligent supervision. Thus, summary judgment is granted to the State on Count 6.

**Claim based on the Vermont Fair Employment Practices Act, 21 V.S.A. § 495**

In Count 7, Plaintiff claims quid pro quo sexual discrimination and hostile work environment harassment under the Vermont Fair Employment Practices Act (VFEPA). The facts concerning the extent of any "employment," and the circumstances of the alleged discrimination and harassment, are undeveloped, and require inferences to be drawn from testimony. The State nonetheless argues that VFEPA does not apply as a matter of law because Plaintiff was never an "employee." The State apparently seeks a ruling from the court that a single incident of payment for work performed does not constitute employment. However, the State's argument is based solely on a handful of federal cases, and the federal statute differs from the applicable Vermont statute. The parties provide no analysis whatsoever on the VFEPA definition of "employee," 21 V.S.A. § 495d(2), or VFEPA's specific sexual harassment component, 21 V.S.A. § 495h. In addition, since the one incident of payment for a photo shoot took place within a context in which Lyons had apparently taken other photos of group activities including Plaintiff, but there is no detail about such events, the factual basis for a ruling is thin.

As is the case with the group 2 claims discussed above (failure to warn, and negligent supervision on the part of employees other than Lyons), the facts are laden with nuances to be sorted out in order to be understood in context, and the meaning they carry is vigorously disputed. Such claims appear to involve novel and significant legal issues. They also involve facts with disputed meaning based on multiple incidents of interactions between several persons (Plaintiff, Lyons, other youth, and other State employees). Such facts have not been (and cannot easily be) laid out in a statement of undisputed facts. Wright and Miller state,

5

when a court is called upon to apply a legal principle in a novel fashion, the potential impact of the decision and the deleterious nature of the conduct called into question are relevant considerations on a Rule 56 motion. In this context a more complete factual record is required and summary judgment ordinarily should be denied if the court has any doubt as to the sufficiency of the movant's showing.

10A Wright and Miller, Federal Practice and Procedure, § 2725, at 415. Such is the case with the claims in this case for failure to warn, negligent supervision, and violation of fair employment practices. Accordingly, the State's Motion is denied with respect to these claims.

### Claim based on the Vermont Fair Housing and Public Accommodations Act, 9 V.S.A. § 4502

In Count 8, Plaintiff claims a violation of the Vermont Fair Housing and Public Accommodation Act, essentially claiming that the course of sexual harassment he experienced at the Department of Travel effectively denied him "accommodations." The State's argument is: "The claim for violation of the Fair Housing law fails for a number of reasons including the obvious fact that Mr. Sessions was not denied for any reason let alone those listed in the statute, any public accommodation." Plaintiff cites several extrajurisdictional cases in which plaintiffs were found to have been denied accommodation or access to government facilities due to sexual harassment. However, Plaintiff has failed to come forward with facts showing that he had or has reason to go to the travel and tourism office, and was or is deprived of the opportunity to go there because of the sexual abuse. Plaintiff has failed to meet the obligation to put forth facts in support of his claim on this count, and summary judgment is granted to the State.

### Order

For the foregoing reasons,

The State's Motion for Summary Judgment is *granted* as to:
        Count 2 ( insofar as it contains a claim for negligent hiring)
        Count 3 (sexual assault, *respondeat superior*)
        Count 4 (direct & *respondeat superior* intentional infliction of emotional distress)
        Count 5 (invasion of privacy, *respondeat superior*)
        Count 6 (breach of fiduciary duty)
        Count 8 (public accommodations)

The State's Motion for Summary Judgment is *denied* as to:
        Count 1 (failure to warn of the danger presented by Mr. Lyons)
        Count 2 ( insofar as it contains a claim for negligent supervision)
        Count 7 (fair employment practices)

Dated at Montpelier, Vermont this __ day of April, 2003.


_____
Mary Miles Teachout
Superior Court Judge